# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00093-CR

**Kent Krueger, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
NO. CR 2004-268, HONORABLE DONALD LEONARD, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Kent Krueger was indicted for the offense of retaliation, specifically for writing threatening letters to the district attorney. The trial court held a jury trial on Krueger's competency to stand trial. The jury found him competent. After the jury trial on competency, appellant pleaded guilty and also pleaded true to two enhancement paragraphs. The trial court sentenced him to a term of 40 years' imprisonment. Appellant appeals the factual sufficiency of the evidence to support the jury's finding of competency to stand trial and further contends that the State breached a term of a plea bargain. Because we find that the evidence is factually sufficient to support the jury's finding and that there was no breach of a plea agreement, we overrule his points of error and affirm the judgment of the trial court.

***Factual Sufficiency***

In his factual sufficiency challenge, appellant urges in two points of error that the jury's finding that appellant was competent to stand trial was so against the great weight and preponderance of the evidence that it is both *manifestly* and *clearly* unjust. In a four-day trial, both sides presented numerous witnesses and exhibits revealing appellant's extensive mental health history and letters written by appellant to various individuals, including law enforcement authorities. The parties agree that appellant has a mental illness. The question is whether he is currently competent and able to consult with his lawyer with a reasonable degree of rational understanding. Appellant sought to show that he had a history of severe mental illness and was incompetent to understand the proceedings and assist his attorney. He presented the testimony of psychiatrist Dr. George Woods, family members, a correctional officer, and other witnesses to show that he was not competent to stand trial. The State sought to demonstrate that appellant was competent to consult with his attorney, had a rational and factual understanding of the proceeding, and overstated any mental illness he might have.

In a factual sufficiency review, the evidence is viewed in a neutral light, favoring neither party. *See Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). In this neutral light, we determine whether the proof supporting the jury's finding is "so obviously weak as to undermine confidence in the jury's determination," or "although adequate if taken alone, is greatly outweighed by contrary proof." *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). A clearly wrong and unjust verdict occurs where the jury's finding "shocks the conscience" or "clearly demonstrates bias." *Santellan v. State*, 939 S.W.2d 155, 164-65 (Tex. Crim. App. 1997). Thus, we

2

are authorized to disagree with the jury's finding even if probative evidence exists that supports the finding. *Id*. at 164; *see also Johnson*, 23 S.W.3d at 7.

Article 46B.003(a) provides that, "A person is incompetent to stand trial if the person does not have: (1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings." Tex. Code Crim. Proc. Ann. art. 46B.003(a)(1), (2) (West Supp. 2005). A defendant is presumed competent but this presumption may be rebutted with a showing by a preponderance of the evidence that the defendant is incompetent. *Id.* art. 46B.003(b).

Appellant's father, Jack Krueger, testified as appellant's first witness. He testified that he adopted appellant in 1962 shortly after he was born. He began noticing that appellant's behavior was erratic when appellant was in the second grade. When appellant was approximately ten or eleven years of age, Mr. Krueger first consulted with a psychiatrist about his behavior. Soon thereafter, the Kruegers divorced and engaged in a custody fight. Appellant lived with his mother in Houston, but ran away to New Braunfels to live with his father. Appellant became involved with drugs and alcohol and was "in and out" of rehabilitation. He was involved in a motorcycle accident, dropped out of school, and was arrested for theft. After he dropped out of school, he was committed to the San Antonio State Hospital where he was diagnosed with bipolar disorder. Krueger described appellant's numerous arrests and hospitalizations and testified that his son has been harshly treated by the court system. Krueger testified that he believes that appellant is "totally incompetent of understanding the cause and effect of this situation." On cross-examination, Krueger acknowledged that appellant has been arrested numerous times and that the police were "after him," but also that appellant is manipulative.

3

Witness Kathy White testified that she has known appellant since he was nineteen years of age and that they have an eighteen-year-old son. She testified that appellant has "bipolar disorder with psychotic tendencies." On cross-examination, she acknowledged that appellant is manipulative. Officer Christopher Kocurek, a correctional officer employed by the Texas Department of Criminal Justice, testified that he had never observed appellant act in a violent manner, that appellant's behavior at trial was his usual behavior, and that he did not seem to be faking his unusual mannerisms.[1] He testified that, "Sometimes you can talk to him; sometimes you can't. It just depends what day it is and what mood he is in." He acknowledged that appellant does not always engage in appropriate behavior or make "reasoned choices."

Appellant's brother, Mark Krueger, testified that appellant has had problems throughout his life and that he began using drugs when he was twelve years of age:

> Kent was extremely self-destructive as a child. If he did not have his way, he would throw anger fits, but not toward other people. He would throw the fit toward himself, actually clawing his face, attempting to damage himself. . . . He had a difficult time expressing himself as a rational person.

---

[1] At the close of the officer's testimony, the court observed:

> Let the record reflect we have now had about six hours of testimony, and throughout that time, the Defendant has rocked in his chair, waved his arms, and despite the fact that we have instructed the jury to ignore it . . . he has continuously interjected unsworn evidence into the record. . . . [A]ny time the testimony becomes critical or unfavorable to the Defendant, he suddenly becomes loud and creates a problem.

He described appellant as "consistently inconsistent." In response to questions as to whether appellant was faking his symptoms or illness, Mark Krueger testified that his brother is not faking, that "he has been doing that since he was a very small infant."

Dr. George W. Woods, a practicing clinical psychiatrist, testified that he performed a neuropsychiatric evaluation of appellant for the purpose of determining his competency to stand trial. Dr. Woods testified that, in his opinion, appellant was not competent to stand trial and was mentally unable to assist his attorney during the trial:

> [I]t's my belief that Mr. Krueger, number one, suffers from a bipolar disorder. It is also my belief that Mr. Krueger suffers from chemical dependency, severe, currently what they call institutional remission. What that means is can't get to it because you're in jail or in the hospital or what have you, so it's an institutional remission, and what we call a rule-out diagnosis.
>
> I believe that Mr. Krueger has what we call a cognitive disorder, and what that means is that there are problems with his brain that are either—that are neurological. It could be head injury. It could be secondary to the fact that he is HIV positive, and people that have HIV often develop problems with how their brain works. It could be because he has other types of traumatic brain problems. . . .

Dr. Woods agreed that appellant has a factual understanding of the legal proceedings but that he could not disclose to his attorney pertinent facts and engage in reasoned choices of legal strategies. In his report to the court, Dr. Woods concluded that in his opinion appellant meets the statutory criteria for having a mental disease or defect and is not competent to stand trial:

> Kent currently understands, in the most concrete fashion, the charges against him. He also understands the roles of the officers of the court. Kent is not, in my professional opinion and to a reasonable degree of medical certainty, able to rationally assist his attorney in the preparation of his defense.

5

In its case, the State presented the testimony of two doctors who had evaluated appellant as well as other witnesses who had observed appellant. Psychologist Mary Alice Conroy, a professor and clinical psychologist for twenty-seven years who had been with the Federal Bureau of Prisons for twenty years, testified that she believed appellant is competent to stand trial. She testified that she had evaluated him twice, first in December 2003 and then just before trial in November 2004. She had also reviewed his extensive medical records.

Dr. Conroy testified first about the 2003 interview. At the beginning of the interview, appellant was speaking rapidly, gesturing and walking around the room. He rambled and was not responsive to her questions. She then testified, "He became much more calm as the evaluation went on. His demeanor changed. He made much more eye contact with me. He began to talk much more rationally. He began to talk about elements of his case, answering questions that I had as opposed to his original rampant demeanor." By the end of the conversation, "he was conversing with me very well." When the prosecutor asked her whether appellant might be malingering or faking his illness, Dr. Conroy testified,

> As we were ending the interview, he understood that this was a competence interview, and it was quite clear at the end of the evaluation that he knew exactly why I was there, and he said—he asked me what I thought, and I said that my job was to give a report to the Court, and he said, "Well, I just need to tell you," and this is not an exact quote, but it's close, "that I can make myself manic. I can always make myself incompetent, and I do it in two ways. I do it by not taking my medication, by loading up on sugar."

Dr. Conroy testified that she was unable to find in the medical records that appellant had actually suffered a head injury, but only that he says that he has and that his statement appeared in the

6

records. Dr. Conroy reported that appellant had taken a personality assessment inventory test in March 2002, which was determined to be invalid because of "negative impression management," and that appellant was overemphasizing his problems or "faking bad." A second test was also deemed invalid because appellant "over reported" any problems he may have had.

Dr. Conroy concluded that appellant has exaggerated his symptoms. She testified that "he has indicated that he wants to appear to be a person with a severe mental illness." She said he will tell you "I want you to know that I'm mentally ill," and he will list the symptoms and then demonstrate them. She testified that appellant told her, "Whatever I have done wrong, it's been because of my mental illness. My bipolar disorder is to blame for whatever it is I have done wrong." She later testified, "In fact, he flags his mental illness for anybody who wants to be aware of it."

Dr. Conroy also concluded that appellant seemed to have "great control" over his manic behavior and that he "brought it down when he needed to bring it down." In her written report, she concluded that appellant "demonstrated his ability to control his behavior and consult with counsel when he chose to do so," but she recognized that "given his particular psychopathology, this could change" and he could "escalate into a manic episode," experiencing confusion, agitation, and flight of ideas. She concluded, "In my professional opinion, at the time of the evaluation, Kent Krueger had sufficient present ability to consult with an attorney with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against him."

In the November 2004 interview, Dr. Conroy interviewed appellant in the jail with correctional officers nearby. Appellant asked whether she had brought a video camera. When she told him that she had not brought one, he told her the jail could provide one. Dr. Conroy testified

that appellant was "very aware that there was going to be a court hearing and that his mental illness was going to be an issue, and so if he wanted to have his symptoms recorded, that would be a good time to do it." She then testified to their discussion of the legal proceedings to take place the next day: "There were many issues around these proceedings that he seemed to rather clearly understand and talked to me about."

The State also presented the testimony of psychiatrist Richard Coons who testified that appellant was competent to stand trial and able to consult with his lawyer. He interviewed appellant and observed him at trial. He pointed out that during the trial appellant had "paid attention to the proceedings and corrected witnesses and made comments about testimony during the course of it, so he has been following what is going on." The State also presented the testimony of several correctional officers who testified to their interactions with appellant.

At the competency jury trial, then, Drs. Conroy and Coons testified that appellant had the present ability to consult with his attorney to a reasonable degree of rational understanding and that he had a rational and factual understanding of the proceeding against him. Dr. Woods disagreed.

Appellant contends that the foregoing evidence was factually insufficient to support a finding of competency because the evidence that he was incompetent was overwhelming and was not rebutted by the State. Although there is some evidence that appellant was incompetent, upon review of the entire record, we cannot conclude that the proof supporting the jury's finding is so obviously weak as to undermine confidence in its determination or that the proof supporting the jury's finding, although adequate if taken alone, is greatly outweighed by contrary proof. *See Johnson*, 23 S.W.3d at 11. We overrule appellant's first and second points of error.

8

***Plea Bargain***

In his third point of error, appellant contends that the State breached its plea bargain when the prosecutor asked the court to assess a life sentence instead of remaining silent as to punishment. There was no plea bargain. As defense counsel stated, "It's not a plea bargain. It's an open plea, Your Honor." We overrule appellant's third point of error.

## CONCLUSION

Having overruled appellant's three points of error, we affirm the judgment of conviction.

_____

Jan P. Patterson, Justice

Before Justices B. A. Smith, Patterson and Puryear

Affirmed

Filed: February 9, 2006

Do Not Publish